SCANNED
DATE 12-3-04
BY: CMG

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

KEITH D. WASHINGTON,
        *Plaintiff*

DOCKET# 04-12141-DPW

    Vs

Massachusetts Commission Against Discrimination

MARY C. GARIPPO, in her individual and official
Capacity as Investigator at Massachusetts
Commission Against Discrimination;

KATHERINE M. MARTIN, ESQ. in her individual and
Official Capacity as Supervisor at Massachusetts
Commission Against Discrimination;

DOUGLAS T. SCHWARTZ, in his individual and official
Capacity as Investigating Commissioner, at
Massachusetts Commission Against Discrimination;

DORCA I. GOMEZ, in her individual and official
capacity as Chairwomen at Massachusetts Commission
Against Discrimination

        *Defendant(s)*

## PLAINTIFF'S MEMORANDUM IN OPPISITION TO DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

**I.    Judicial Notice [Washington I –98-11868DPW]**

In the interest of full disclosure Plaintiff asserts this Court has abused its judicial discretion in Washington I by failing to apply the traditional, testimonial understanding of Petitioner's confrontation rights, as defined in *Greene v. McElroy*, 360 U.S. 474, 496-497 (1959) and *Goldberg v. Kelly*, 397 U.S. 254 (1970), *"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,"* the minimal requirements of the due process clause must be satisfied. Plaintiff alleges this Court's ability to be impartial and objectively adjudicate this compliant, after committing the same Fifth and Sixth Amendment

1

Right's violations as alleged in instant compliant, is highly questionable. Since this Court has already formed an opinion as to the facts in instant compliant and put these fact in writing in it's Order of January 31,2000, Plaintiff request this Court disqualify itself from hearings in this matter, pursuant to 28 U.S.C. section 455(a).

## II.    Events Underlying This Dispute

1.    On July 25, 1997 Washington filed duel discrimination complaints as follows" (1) MCAD #97-BEM-3045 and (2) EEOC Charge # 16C973396 based on a continuing pattern of race based discrimination culminating with the denial of severance benefits[1] on/or about January 6,1997 and violations under Americans with Disabilities Act.

2.    In response to petitioner's complaint filed with MCAD Patricia A. Granger, Esq. in her capacity as counsel for State Street Bank & Trust Company published false and defamatory information regarding the terms of petitioners no-fault termination as an at will employee.

3.    After a preliminary review of plaintiff's compliant which did not include live testimony and/or depositions, but relied exclusively on Pleadings from State Street Bank & Trust Company counsel, on December 17,1997, MCAD Memorandum: Recommendation for Dismissal of Compliant was published with the following commentary:

*"The Commission can not investigate Complaint's charge of discrimination because Compliant did not file his compliant within the six-month statue of limitations period. After discovery of Complaint's improprieties[2] of Respondent's money... Complaint's allegations that the Respondent retaliated against him by denying him unemployment[3] and disability benefits as well as a severance package does not extend the statue of limitations. There is also insufficient evidence to indicate that Compliant was to disabled to file since he consulted with attorneys during the appropriate filing time. The Compliant is dismissed for lack of jurisdiction."*

Notwithstanding MCAD counsel efforts to link this compliant with previous litigation instant compliant deals specifically with the above disputed commentary, which Plaintiff represents is materially false, the result of a flawed investigative process and represents a violation of clearly established federal law.

---

[1] Pursuant to State Street Bank & Trust Company's employee manual "Wavelength's" severance and bridge pay are contractual benefits of employment.
[2] Plaintiff's no-fault termination as an at-will employee was memorialized in a written contract.
[3] State Street Bank & Trust Company paid plaintiff full unemployment benefits without challenge.

## III. Defense Claim Of Absolute Immunity is Erroneous

Immunity is accorded to public officials from liability to anyone injured by any actions that are the consequence of the exercise of official authority and/or duty. Administrative officers are generally immune only <u>for discretionary</u> as opposed to <u>ministerial acts</u> that are done honestly and <u>in good faith</u>. Prosser & Keeton, Torts section 132 95th ed. 1984). Their is no substantial basis in law for holding that MCAD and it's employees may with impunity discharge their duties in a way that is known to violate the Constitution or in a manner that they should know transgresses a clearly established constitutional rule. State officials should enjoy no greater zone of protection when they violate federal constitutional rules than do federal officers. Instant compliant alleges MCAD and the individual defendant's acted well outside the scope of their official duties.

## IV. MCAD Statutory Role

   a. <u>Chap.151B Section 3:</u>

The commission shall have the following functions, powers and duties:

  1. To establish and maintain its principal office in the city of Boston and such other offices within the commonwealth as it may deem necessary.

  2. To meet and function at any place within the commonwealth.

  3. To appoint such attorneys, clerks, and other employees and agents, as it may deem necessary, fix their compensation within the limitations provided by law, and prescribe their duties.

  4. To obtain upon request and utilize the services of all executive departments and agencies.

  5. To adopt, promulgate, amend, and rescind rules and regulations suitable to carry out the provisions of this chapter, and the policies and practice of the commission in connection therewith.

  6. To receive, investigate and pass upon complaints of unlawful practices, as hereinafter defined, alleging discrimination because of the race, color,...

  7. To hold hearings, subpoena witnesses, compel their attendance, administer oaths, take the testimony of any person under oath, and in connection therewith, to require the production for

examination of any books or papers relating to any matter under investigation or in question before the commission. The commission may make rules as to the issuance of subpoenas by individual commissioners."

8. No person shall be excused from attending and testifying or from producing books, records, correspondence, documents or other evidence in obedience to the subpoena of the commission, on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture; but no individual shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, except that such individual so testifying shall not be exempt from prosecution and punishment for perjury committed in so testifying.

9. To issue such publication and such results of investigations and research as in its judgment will tend to promote good will and minimize or eliminate discrimination because of the race, color, ...

## V.    Defendants Acted Outside Their Statutory Role

### A.    Fifth Amendment Violation

MCAD's published findings which are based exclusively on innuendo, speculative assertions and conclusory statements contained in pleadings from State Street counsel provide irrefutable and dispositive evidence that Plaintiff has been denied his Constitutional Fifth Amendment right to "liberty". There can be no doubt that the Memorandum, which alleged "*After discovery of Complaint's improprieties of Respondent's money...*" would seriously impair petitioner's reputation for honesty and integrity among family, friends and within the global financial services industry where he has worked in positions of increasing global responsibility for +30-years, with the expected adverse financial consequences. The Supreme Court, *Goldberg v. Kelly, 397 U.S. 254 (1970); Wisconsin v. Constantineau, 400 U.S. 433 (1971)* and *Board of Education v. Roth, 408 U.S. 564*, decided in 1972, has consistently affirmed an employee has a liberty interest in remaining free from the public dissemination of stigmatizing information by his employer. MCAD's failure to provide plaintiff any opportunity to be heard or to confront witnesses/evidence against him on this material

4

point, before issuing its Memorandum of December 17,1997, represents an unreasonable application of clearly established federal law regarding the minimum requirements of due process.

**B.     Sixth Amendment Violation:**

The Constitution's guarantee of due process rings hollow in this case where petitioner has been prevented from confronting his accusers. Inherent within the Constitution's promise of due process lies the cardinal principal that no one will be deprived of his liberty absent a full and fair opportunity to challenge his accusers through cross examination. Applying the traditional, testimonial understanding of the Confrontation Clause, the proper result here is clear: Plaintiff's confrontation rights were violated when MCAD published it's Memorandum accepting fact the hotly disputed self-serving pleadings of State Street counsel, and he was never afforded any opportunity to challenge these findings through cross-examination.

**C.     Butz v. Ecomomou, 438 U.S. 478 (1978):**

*"Agency officials who perform functions analogous to those of a prosecutor must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages for their parts in that decision."*

Defendant's Memorandum of December 17,1997, went well beyond making a determination of whether to proceed or not. Pursuant to established federal law as determined by the U.S. Supreme Court, the inclusion of <u>disputed stigmatizing information</u> triggered the due process clause of the Fifth Amendment, since the damage is done upon publication.

**D.     Defendant's Exceeded Their Statutory Role**

MCAD (*erroneously*) decided Plaintiff's Compliant was time-barred; this is clearly an adjudicatory function, for which they are entitled to absolute immunity, since adequate legal remedies were available. However, Defendant's, crossed the line and clearly exceeded their defined statutory role when they proceeded to deny Plaintiff's constitutional right to "liberty" by publishing disputed stigmatizing information which ignored established federal law as determined by the U.S. Supreme Court in, *Greene v. McEloy, 360 U.S. 474, 496-497*"*Certain principles have remained relatively immutable in our jurisprudence. One of these is that where government action seriously injures an individual, and the reasonableness of the action depends on fact finding, the evidence used to*

5

prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue. While this is important in the case of documentary evidence, it is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots. They find expression in the Sixth Amendment...This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, ... <u>but also in all types of cases where administrative ...actions were under scrutiny."</u> Prior to publication of it's stigmatizing Memorandum MCAD was required, as a matter of law, to give Plaintiff an opportunity to confront and cross-examine the witnesses relied on by the Agency. MCAD and its employees enjoy no greater zone of protection when they violate well-established federal constitutional rules than do federal officials.

### III. Defendant's Are Not Entitled to FRCP 12 (b) (6) Relief

The legal standard for summary judgment dismissal pursuant to FRCP 12(b)(6) is established by <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). A complaint should not be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Phillip v. Univ. of Rochester</u>, 316 F.3d 291, 293 (2d Cir. 2003); <u>Cooper v. Parsky</u>, 140 F.3d 433, 440 (2d Cir. 1998); <u>Bridgeway Corp. v. Citibank, N.A.</u>, 132 F. Supp. 2d 297, 302-03 (S.D.N.Y. 2001). In deciding whether a complaint states a claim, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. <u>EEOC v. Staten Island Sav. Bank</u>, 207 F.3d 144, 148 (2d Cir. 2000); <u>Hernandez v. Coughlin</u>, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 536 (1994). A court's task "in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" <u>Cooper</u>, 140 F.3d at 440 (quoting <u>Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir. 1984)). Thus, the fundamental issue at the dismissal stage "is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test." <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir.

1998) quoted in Phelps v. Kapnolas, 308 F.3d 180, 184-85 (2d Cir. 2002). The notice pleading principles embodied in Rules 8 and 12 of the Federal Rules of Civil Procedure are intended to remove technical obstacles impeding access to the federal courts. Anderson v. Coughlin, 700 F.2d 37, 43 (2d Cir. 1983); Boston v. Stanton, 450 F. Supp. 1049, 1053 (W.D. Mo. 1978). A complaint need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47; see Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002). Thus, the federal rules allow simple pleadings and "rel[y] on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512. Petitioner asserts that the events underlying instant compliant are that the named Defendant's, deprived plaintiff of his constitutional right to "liberty" by publishing defamatory statements in violation of his I Fifth Amendment right to due process.

### IV.     Plaintiff Is Entitled to Summary Judgment

Under Massachusetts law, supervisor's, manager's and/or agents enjoy a qualified privilege from personal liability only when performing within the scope of their normal employment duties; the privilege does not shield employees as in this case, where the actions are improper and illegal in means. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff, at the height of his professional career and earnings capacity, has suffered extreme financial hardship and severe emotional distress, including anxiety, humiliation and fear of his future well-being. Plaintiff seeks declaratory and injunctive relief, compensatory damages consistent with the present value of the compensation, salary, stock & cash bonuses, pension and medical benefits, of a high performing (top 10%) senior vice president of State Street Bank & Trust Company from July 2,1992 until normal retirement. Based on indisputable dispositive documentary evidence currently in the record no genuine issues of material fact exist and Defendant's can offer no valid explanation for their respective illegal actions, accordingly summary judgment for Plaintiff is requested.

Submitted: November 27, 2004

By: Keith D. Washington, pro se